IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

*Alexandria Division*

| | |
|---|---|
| IN RE: APPLICATION OF THE UNITED STATES OF AMERICA FOR SEARCH WARRANT AND ORDERS PURSUANT TO 18 U.S.C. §§ 2703(C)(1)(A) AND 3122(A)(1) FOR THE | No. 1:21-sw-648 |
| (1) DISCLOSURE OF PROSPECTIVE CELL-SITE DATA AND E-911 PHASE II DATA; | |
| (2) DISCLOSURE OF STORED TELECOMMUNICATIONS RECORDS; AND | |
| (3) INSTALLATION OF A PEN REGISTER/TRAP AND TRACE DEVICE | |
| ON **571-351-8402** | |

## AFFIDAVIT IN SUPPORT OF PROBABLE CAUSE

I, Timothy Alley, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.    I make this affidavit in support of an Application for a Search Warrant under 18 U.S.C. §§ 2703(c)(1)(A) for information associated with a cellular device assigned with the telephone number **571-351-8402** ("TARGET CELL PHONE"), which is serviced by T-Mobile, US Inc. ("TELEPHONE SERVICE PROVIDER").  As a provider of wireless communications service, the TELEPHONE SERVICE PROVIDER is a provider of an electronic communications service, as defined in 18 U.S.C. § 2510(15).

2.    Because this warrant seeks the prospective collection of information, including cell site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3123(3) & (4) ("pen/trap device"),

1

the requested warrant is designed also to comply with the Pen Register Act, *see* 18 U.S.C. §§ 3121–3127.  The requested warrant therefore includes all the information required to be included in an order pursuant to that statute.  *See* 18 U.S.C. § 3123(b)(1).

3.      The information to be searched is described in the following paragraphs and in Attachment A.  This Affidavit is made in support of an Application for a Search Warrant under 18 U.S.C. § 2703(c)(1)(A) and Federal Rule of Criminal Procedure 41 to require the TELEPHONE SERVICE PROVIDER to disclose to the government the information further described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

4.      I am a Deputy U.S. Marshal with the United States Marshal Service, and have been since April 2009.  During the course of my career, I have used information obtained from search warrants to locate and arrest many dangerous fugitives.  I have extensive training regarding the information available to law enforcement agencies from telephone service providers, and how to process that information in order to locate individuals.

5.      The facts in this Affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses.  This Affidavit is intended to show merely that there is probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6.      Based on the facts set forth in this Affidavit, there is probable cause to believe that criminal violations of 18 U.S.C. § 1073 (Flight to Avoid Prosecution) are being committed by MARIA ANTONIA LOVOS ("LOVOS").  There is also probable cause to search the information described in Attachment A for evidence of these crimes as further described in Attachment B.

7.     The Court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711.  Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, 18 U.S.C. § 2711(3)(A)(i).

<u>PROBABLE CAUSE</u>

8.     The United States, including United States Marshal Service, is conducting a criminal investigation of LOVOS regarding possible violations of 18 U.S.C. § 1073 (Flight to Avoid Prosecution)

9.     On or about June 15, 2021, LOVOS appeared before the Hon. Anthony J. Trenga and admitted to straw-purchasing 30 firearms on behalf of Jesus Funez Fuentes ("Fuentes"), with whom she was romantically involved.

10.     The Court accepted LOVOS' plea of guilty to conspiring to make false statements in connection with firearm transactions, in violation of 18 U.S.C. § 371, and continued the matter to October 27, 2021 for sentencing.

11.     The Court allowed LOVOS to remain on pretrial release, subject to the following conditions:

a.   Report on a regular basis to Pretrial Services;

b.   Continue or actively seek employment;

c.   Do not depart the Washington, D.C. metropolitan area without prior approval of Pretrial Services or the Court;

d.   Avoid all contact, directly or indirectly, with any person who is or may be a victim or witness in the investigation or prosecution unless in the presence of counsel;

e.   Not possess a firearm, destructive device, or other weapon;

f.   Reside at current residence and not move without prior approval from Pretrial Services;

3

g.   Submit to random urine screens and / or treatment as determined by Pretrial Services.

12.   On or about July 29, 2021, LOVOS' probation officer submitted a Petition for Action on Conditions of Pretrial Release to the Court.  Specifically, the probation officer alleged that LOVOS had failed to report to the probation office for drug testing on July 15, 2021 and failed to report as directed again on July 21, 2021.

13.   On or about July 30, 2021, the Hon. Anthony J. Trenga issued a warrant for arrest based on the U.S. Probation Office's petition and request.

14.   At this point in time, LOVOS has absconded from supervision, her whereabouts remain unknown, and the warrant for her arrest remains unserved.

15.   Your Affiant has reviewed recent calls made and received by Fuentes, who remains incarcerated in the Alexandria Adult Detention Center pending sentencing.

16.   Between September 2, 2021 and September 20, 2021, FUENTES made or received more than 35 calls to / from **571-351-8402**, which is a number serviced by the TELEPHONE SERVICE PROVIDER.

17.   Your Affiant has listened to audio recordings of some of these calls and found them to be between a male and a female who speak to one another as if they have a romantic relationship.

18.   Special Agent Joseph Norman of the Bureau of Alcohol, Tobacco, Firearms & Explosives ("ATF"), the agent who investigated LOVOS and Fuentes in their underlying cases, has confirmed that the male speaking in the jail calls is Fuentes and the female speaking in the calls is LOVOS.  Special Agent Norman has previously interviewed LOVOS and has previously spoken with Fuentes.  He has also listened to other jail calls between the two that were obtained in the course of his investigation.

19.     Obtaining information regarding when and with whom LOVOS is communicating utilizing the TARGET CELL PHONE and obtaining prospective, real-time location data for the TARGET CELL PHONE will assist your Affiant in locating LOVOS and executing the current warrant for her arrest so that she may be brought before the Court and sentenced.

20.     In my training and experience, I have learned that the TELEPHONE SERVICE PROVIDER is a company that provides cellular communications service to the general public.  I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information (1) about the locations of the cellular telephones to which they provide service, including E-911 Phase II data, also known as GPS data or latitude-longitude data and (2) cell-site data, also known as "tower/face information" or cell tower/sector records.  E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers.  Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected.  These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas.  Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device.  Accordingly, cell-site data is typically less precise that E-911 Phase II data.

21.     Based on my training and experience, I know that TELEPHONE SERVICE PROVIDER can collect E-911 Phase II data about the location of the TARGET CELL PHONE, including by initiating a signal to determine the location of the TARGET CELL PHONE on

TELEPHONE SERVICE PROVIDER's network or with such other reference points as may be reasonably available.

22.     Based on my training and experience, I know that TELEPHONE SERVICE PROVIDER can collect cell-site data about the TARGET CELL PHONE.  Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication.  I also know that wireless providers such as TELEPHONE SERVICE PROVIDER typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

23.     Based on my training and experience, I know that each cellular device has one or more unique identifiers embedded inside it.  Depending on the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI").  The unique identifiers—as transmitted from a cellular device to a cellular antenna or tower—can be recorded by pen/trap devices and indicate the identity of the cellular device making the communication without revealing the communication's content.

24.     Based on my training and experience, I know that wireless providers such as the TELEPHONE SERVICE PROVIDER typically collect and retain information about their subscribers in their normal course of business.  This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service.  I also know that wireless providers such as the TELEPHONE SERVICE PROVIDER typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular device and other transactional records, in their normal course of business.  In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the TARGET CELL PHONE's user or users and may assist in the identification of co-conspirators and/or victims.

<u>AUTHORIZATION REQUEST</u>

25.     Based on the foregoing, I request that the Court issue the proposed Search Warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

26.     I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed.  There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705.  Providing immediate notice to the subscriber or user of the TARGET CELL PHONE would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution.  *See* 18 U.S.C. § 3103a(b)(1).  As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not

authorize the seizure of any tangible property.  *See* 18 U.S.C. § 3103a(b)(2).  Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above.  *See* 18 U.S.C. § 3103a(b)(2).

27.     I further request that the Court direct the TELEPHONE SERVICE PROVIDER to disclose to the government any information described in Attachment B that is within the possession, custody, or control of the TELEPHONE SERVICE PROVIDER.  I also request that the Court direct the TELEPHONE SERVICE PROVIDER to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with services of the TELEPHONE SERVICE PROVIDER, including by initiating a signal to determine the location of the TARGET CELL PHONE on the network of the TELEPHONE SERVICE PROVIDER or with such other reference points as may be reasonably available, and at such intervals and times directed by the government.  The government shall reasonably compensate the TELEPHONE SERVICE PROVIDER for reasonable expenses incurred in furnishing such facilities or assistance.

28.     I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the TARGET CELL PHONE outside of daytime hours.

Respectfully submitted and attested to in accordance with the requirements of Fed. R. Crim. P. 4.1 via telephone on September 24, 2021.

*Timothy Alley*
Timothy Alley
Deputy U.S. Marshal
United States Marshals Service

Sworn and subscribed to me on September 24, 2021.


_____
The Honorable Michael S. Nachmanoff
United States Magistrate Judge
Eastern District of Virginia

## **ATTACHMENT A**

<u>PROPERTY TO BE SEARCHED</u>

1.  The cellular telephone assigned call number **571-351-8402** ("TARGET CELL PHONE"), whose wireless service provider is T-Mobile, US Inc. ("TELEPHONE SERVICE PROVIDER PROVIDER"), headquartered at Bellevue, Washington and with a legal compliance department located in Parsippany, New Jersey.

2.  Records and information associated with the TARGET CELL PHONE that is within the possession, custody, or control of the TELEPHONE SERVICE PROVIDER, including information about the location of the cellular telephone if it is subsequently assigned a different call number.

## ATTACHMENT B

## PARTICULAR THINGS TO BE SEIZED

**I.   INFORMATION TO BE DISCLOSED BY THE PROVIDER**

To the extent that the information described in Attachment A is within the possession, custody, or control of the TELEPHONE SERVICE PROVIDER, including any information that has been deleted but is still available to the TELEPHONE SERVICE PROVIDER or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the TELEPHONE SERVICE PROVIDER is required to disclose to the government the following information pertaining to the TARGET CELL PHONE listed in Attachment A and its related account with the TELEPHONE SERVICE PROVIDER ("SUBJECT ACCOUNT"):

**A.  The following information about the customers or subscribers associated with the SUBJECT ACCOUNT for the time period of 60 days preceding the date the Warrant is executed up to the present:**

1. Names (including subscriber names, user names, and screen names);

2. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

3. Local and long distance telephone connection records;

4. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

5. Length of service (including start date) and types of service utilized;

6. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

7. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

8. Means and source of payment for such service (including any credit card or bank account number) and billing records.

**B. The following historical stored telecommunications records associated with the SUBJECT ACCOUNT for the time period of 60 days preceding the date the Warrant is executed up to the present:**

1. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the SUBJECT ACCOUNT, including:

   a. The date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

   b. All available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the TARGET CELL PHONE.

**C. The following prospective data associated with the TARGET CELL PHONE for the time period of 30 days from the date of the Warrant (or the date the monitoring of the TARGET CELL PHONE's location becomes operational, whichever is later:**

1. Information associated with each communication to and from the TARGET CELL PHONE for a period of 30 days from the date of the Warrant or the date the monitoring equipment for the device's location becomes operational, whichever is later, during all times of day and night, including:

   a. Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

   b. Source and destination telephone numbers;

   c. Date, time, and duration of communication; and

   d. All available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the TARGET CELL PHONE

2

This warrant does not authorize the seizure of any tangible property.  In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information.  *See* 18 U.S.C. § 3103a(b)(2).

## II.   INFORMATION TO BE SEIZED BY THE GOVERNMENT

All information described above in Section I that constitutes evidence of violations of 18 U.S.C. § 1073 (Flight to Avoid Prosecution)  involving Maria Antonia Lovos during the period of July 15, 2021 through the present.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the TELEPHONE SERVICE PROVIDER in order to locate the things particularly described in this Warrant.